24-13756. We've got Ms. Klein here for the appellant, Mr. Beasley here for the appellate. Ms. Klein, whenever you're ready. Thank you. Thank you. Good morning. My name is Hinda Klein. I'm here on behalf of the appellant, Mr. Brinley. Essentially, there are just two issues before this court today. The first is whether the district court judge, Judge Moore, erred as a matter of law in finding that there was an issue of fact with respect to an Eighth Amendment violation and in failing to consider the applicable law with respect to that alleged violation. Second, whether under well-established case law, Mr. Brinley is immune, under qualified immunity principles. We submit that Judge Moore was absolutely incorrect. In order to show an Eighth Amendment violation, the plaintiff must establish that the defendant created a substantial risk of serious harm, that the defendant was actually subjectively aware of the risk, and that the defendant disregarded the risk by not reasonably responding to it. Judge Moore, in his order on summary judgment, while he did include this law as part of his order, did not actually go so far as to address assuming the truth of the plaintiff's allegation in this case, whether or not . . . When was the risk created? When? When was it created, the risk of harm, serious harm, as to which he was insensitive? The first is they decided to break up the concrete. Yes. Is that what it was? As I understand it, I believe . . . In terms of as a potential risk, when they decide to break up the concrete? I think that it's the plaintiff's . . . Does that work out for the whole risk, or was it not then, but when he proceeded to dig it up? Is that when the risk occurred, and then you decide whether he was reckless in not doing something? As the plaintiff has alleged it, the risk of harm was the use of a front-end to break up the concrete, which is when, according to the plaintiff, a piece of that concrete went flying. I don't recall any allegation that the risk of harm was the job in general, just breaking up the concrete. He did not complain about the tools that he was given to do his job. He never complained to Mr. Brindley. He didn't complain to anyone. It was all about the use of the front-end loader, and his allegation that he was not instructed to stand far enough away so that it wasn't a danger to him. In order for this court to determine whether or not there was an actual substantial risk, that risk must be a strong likelihood and not just a possibility of something happening. There are no allegations in the complaint and certainly no evidence before Judge Moore that there was an actual strong likelihood of a piece of concrete flying. That is an issue that is measured objectively and not subjectively. Judge Moore did not actually go into great detail in his order on summary judgment, but just simply said there are issues of fact and therefore summary judgment is denied. If you take all the facts favorable to Plaintiff and just lead them over, you eliminate the fact issue. Correct. Do you agree with that? I absolutely agree with that. I can . . . Can I ask you to just . . . Yes. . . . move on? Let's just assume that there was an Eighth Amendment violation. Could you address the question of clearly established law? It seems like the plaintiff's best argument for clearly established law is that this is kind of a general principle case, there's a legal principle here that you can't make prisoners work in an unsafe environment. What about that? Well, that generic statement, you can't . . . prisoners are entitled to a safe working environment is not the kind of clearly established law that the case law requires. There has to be either a materially similar case already decided by the Supreme Court, by this court or the Florida Supreme Court and that's on a factual basis. No, that's not true. I mean, there's the . . . that's one way to establish . . . Correct. . . . established law, but the other way is by establishing a broader, clearly established principle that should control the novel facts . . . Right, that was . . . These are definitely novel facts, but aren't they subsumed within the broader principle that you can't have unsafe working conditions in a prison? No, because unsafe working conditions can be simple negligence. They're not punitive in general and I think both parties have cited all kinds of case law on situations where inmates have been working in situations where they've been injured. Most of those cases have found that a simple negligence or sometimes even gross negligence in failing, for example, to comply with OSHA laws, failing to train inmates, is not sufficient to establish a clearly established principle of law. It's certainly not something that the average person would assume is an Eighth Amendment violation of the cruel and unusual nature. In this case, Judge Moore did not decide his summary judgment on the assumption that the facts alleged by the plaintiff were true. He just simply said that there were issues of fact and that there was a right of a prisoner to be free from conditions of confinement, including workplace conditions which result in cruel and unusual punishment under the Eighth Amendment. While that is a true statement of law, the issue really before the court was whether or not there was cruel and unusual punishment. It's absolutely clear that assuming everything that the plaintiff in this case alleged was true, at best, there was simple negligence in Mr. Brinley's failing to, for example, say, stand twenty-five feet back, stand fifty feet back. He did, it's undisputed, say, stand back before he actually broke up the concrete. Even assuming there was some kind of negligence . . . I thought it was a little bit more than that though. You have him doing this sort of heavy construction and he's not provided a helmet, he's not provided any safety gear, I mean, isn't that . . . I mean, I'm not necessarily saying you're wrong, but I mean, it's more than just a, you should stand farther away. Well first of all, he wasn't injured while he was doing any kind of heavy construction. Second of all, assuming that to be true, and of course there is a question of fact as to what he was provided, the provision of that safety stuff was on the part of the FDOC, it was not on the part of Mr. Brinley. Third of all, that's not really the reason why he was injured in this case. It wasn't just some generic, I wasn't provided with any training or safety equipment. It was, I wasn't told to stay far enough away so that a piece of flying concrete wouldn't hit me. I think this case is very clear that first of all, there was no Eighth Amendment violation and second of all, even if there was an Eighth Amendment violation, Mr. Brinley was qualifiably immune from suit and we would respectfully request that this court remand the case back to Judge Moore with directions to enter judgment in Mr. Brinley's favor. Thank you. Very well. You've got some rebuttal time coming to you. Mr. Beasley, let's hear from you. And let me ask you before you get started, am I correct, you're a student? No, Your Honor, I'm not a student. But you're with the clinic. Yes, yes. Okay, very well. Thank you for taking on the case for your service to your client and to the court. Thank you very much, Your Honors, and may it please the court. Luke Beasley on behalf of the appellee, Mr. Joshua Hubbert. Before I begin, I'll just briefly note, I do want to thank the students at Northwestern Law School who actually briefed this appeal last semester. They've all moved on and graduated and are at their first legal jobs, which is why they're not here today to argue the appeal. I will thank the current year Northwestern students who are here and helped me prepare for the argument today. So to the reason we're actually here today, this court should either dismiss Mr. Brindley's interlocutory appeal for lack of jurisdiction, or if it maintains jurisdiction over the appeal, it should affirm Judge Moore's denial of summary judgment on both the qualified immunity issue and the underlying constitutional claim. First, on the jurisdictional issue, it seems to me that Judge Choflat is obviously correct. That in this posture, we can just assume all the facts in your favor and move on to the legal issues. I mean, you know, Mitchell, Johnson, the cases that follow them, they all seem to say the same, right? Why can't we just do that? Your Honor, I do agree with you that, you know, typically when this issue is presented in the district court, you know, at the initial stages, the way that this issue is presented is you accept or assume is true the plaintiff's version of events, or you take all the evidence in the light most favorable to the plaintiff. That's not what happened here in the district court, and we would submit that's not what happened here, at least in the opening brief that was submitted to your honors. I'll just note briefly, and I won't belabor the jurisdictional point reading your question, but, you know, the argument that was advanced in the district court was directly contradictory to Mr. Hubbard's version of events. The qualified immunity issue in particular was argued, and you can see the motion, the briefing, the district court order contained in the appendix, but the briefing said, you know, is it, was there clearly established law that would have put Mr. Brinley on notice that by the provision of personal protective gear, including a hard hat, and with the direction to stand back so that they are outside the zone of danger, was he on notice that he was violating the Constitution, right? So the issue was inextricably bound up with fighting on the facts there, and we cited for your honors in our brief the five or six times where it's fighting on the facts in this appeal. And respectfully, I do think that my friend on the other side just continued to fight on the facts, including on the point of whether, you know, who was in charge of providing personal protective equipment. The argument I heard advanced again now in front of this court is that, well, that was FDOC's responsibility, that it wasn't Mr. Brinley's responsibility, and he therefore can't be held liable for it. So that's why we raised the jurisdictional issue. This was not appropriately presented in the district court. We don't think it was appropriately presented here, and given the interlocutory review is exceptional, right? This is an unusual way of proceeding. We think it's important that, you know, it's briefed properly, that the issue was presented properly, and it wasn't here. I will move on, your honors, to the qualified immunity question, and then finally the underlying constitutional violation question. On qualified immunity, as Judge Brasher noted, there are three routes to establish clearly established law that would have put Mr. Brinley on notice here. We agree with Judge Brasher's observation that the best fit for that here is the second route under the Lewis factors, which is, was there a broad principle of constitutional law that can control the novel facts of this case? And we concede, for purposes of this field, that this was novel facts. We have not identified for this court, you know, a perfectly analogous case where there was, you know, breaking up of concrete with heavy duty demolition equipment, where an inmate was subsequently injured, that held, that was... So if we're in what I'll call bucket two, what is your principle? Yes, your honor. Our principle is that a public official who is entrusted the custody and care of inmates cannot subject them to a substantial risk of serious harm, right? So the conditions of confinement cases that emanate from the Supreme Court through the 11th Circuit that have been well established for a very long time, establish that you may not subject inmates to unreasonable risk of harm. Now, that applies within the prison walls. It applies outside the prison walls, right? When an inmate is in the custody and care of a public official, they have a right to be free from this substantial risk of serious harm. And once you know that, once you're... Were they really in custody of Bridley? I'm sorry, your honor? I'm concerned about the custody. It seems to me they came from the bus, probably, with the supervisor of the inmates. Yes, your honor. So the supervisor brings them to a place where the work is being done. Yes, your honor. Now, are they in the custody of Bridley? Are they still in the custody of the department? Yes, your honor. So I think you're correct, first of all, about the transportation. They were transported by FDOC officials to the St. Lucie County worksite. They had a supervisor? Yes, your honor. There were FDOC personnel, at least, that were present during the transport phase. Now, the evidence that you have before you, and it's a very, very thin record, because this was a motion for summary judgment filed not even two months after the answer to the complaint. So we just have dueling affidavits on this, okay? But the evidence that is submitted to you, and that you have to take as true for present purposes, is that once they went to the actual concrete slab where they were doing this demolition work, no FDOC officers were present. Mr. Brindley, the St. Lucie County employee, the defendant in this case, was the only individual that was present. More than that, before they go to the worksite, the inmates are instructed. This is in Mr. Hubbard's affidavit. The inmates are instructed, you have to follow all of the instructions of the St. Lucie County employees. They're in charge. And if you don't, failure to follow the instructions of Mr. Brindley or other St. Lucie County employees means you're going to be punished, right? So at least in the situation where this incident occurred, we think the record is very clear that it was the St. Lucie County Mr. Brindley who was in charge of these inmates, and no FDOC personnel. There's a suggestion, and I think it's in the brief on appeal, I may be mixing up in the motion for summary judgment, that there was a relay-style communication that occurred. That actually what happened is the FDOC personnel were always present, and the St. Lucie County employees would filter their instructions through the FDOC prison guards. That's not true for present purposes. That's a disputed fact. Mr. Hubbard is very clear. Oh, there's no fact. Yes, yes, that's right. That's right, Your Honor. So we think that absolutely, St. Lucie County employee Mr. Brindley is absolutely on the hook for the care of the inmates, the control of the inmates at the time that this incident occurred. Now, what is the unreasonable risk created? Yes, Your Honor, I was actually, I noted that question to my friend, and I was going to address that. There is, let me be as direct as possible, the unreasonable risk was created at the time Mr. Brindley opted to break up this concrete using the backhoe. Well, that was a potential risk. Nothing happened. Potential risk. Well, I think that Is it the risk occur when he actually did it? Use the backhoe. Your Honor, I think inherent in the word, after he told him to stand back. Yes, when he began operating the backhoe on the concrete. Created the risk. Yes, Your Honor. Yes, so when he began operating the backhoe, and what it was, it was a backhoe with a forklift attachment that was wedged underneath the concrete slab, and the goal was to raise it up, hoping that wouldn't break up. It was deliberately indifferent to the danger at that point in time. Yes, Your Honor. Yes, and I just wanted to clarify, when you said potential risk versus risk, I mean, I think Well, there was a potential risk to begin with. The work itself was risky if there was somebody around, let's say. Yes, Your Honor. Yes, and the evidence that is submitted for this court is that my client, Mr. Hubbard, was standing contiguous with the concrete slab, not more than five feet away from where the work was being performed at the time the work actually began. There was a mention of the stand back instruction that was given. Actually, before I reach that, I just also want to be very clear. For present purposes, no personal protective equipment was provided, and it was St. Lucie County's responsibility to provide that. Wasn't provided. Then when the work was about to be performed, there's evidence in the record that there was stand back. The instruction stand back was given. That was referenced by my friend here. But what's not on the record is any evidence that that warning was heeded, that there was time for my client to stand back a foot more, two more feet, any more particular directions on what my client's supposed to do before Mr. Brinley began doing the work. The fact is, you have to take them, is that he's standing right next to that concrete slab once this work begins. On the clearly established law question, if I might just briefly return to that, we think this is a situation where, even though you don't have a materially similar prior 11th Circuit or Supreme Court case, once you know that you cannot subject an inmate to an unreasonable risk of harm, and you know that that has been applied in a variety of different factual circumstances, once you know that, that's all the information that you need. Respectfully, you don't need to be a constitutional scholar to understand what is dangerous. It doesn't take a very far leap to understand that once I'm operating heavy duty demolition equipment on this concrete slab, a concrete slab that, by the way, would not break up when a jackhammer was used on it. So we know that this is particularly recalcitrant concrete, difficult concrete to break up. And that's why we're bringing the really heavy duty machinery to use on it. It should be obvious to someone like Mr. Brindley, who does this work for a living, that he is subjecting my client to an unreasonable risk of harm. And maybe there's no good answer to this, but isn't this just like a state law negligence claim, kind of waiting? Like, why are we here with this? Especially given that it happened outside the prison context. I mean, this just seems like an unusual route to get to court instead of just suing for negligence. The first answer is that the conduct here rises above ordinary negligence. The suggestion was made in the papers, and here again today, that when you have injuries. Oh, I'm sorry, Your Honor. I'm sorry. The question is whether it's deliberately indifferent. Yes, Your Honor. Yes, absolutely. And it's certainly our contention that the facts of this case rise to the level of deliberate indifference. And that's why this is not simply an ordinary negligence case. We think that the evidence of the risk of harm, which I've already covered with you, but also the evidence that suggests Mr. Brindley knew the risk of harm. And maybe this is just my conception of deliberate indifference, and maybe I'm wrong. But I feel like usually your deliberate indifference case is when there's something. So the classic example, I feel like, is where you've got someone in prison, and that person is put in a cell with someone who is likely to harm them. And so you're suing the prison guard or the prison officer, saying you were deliberately indifferent to the risk that somebody else might do something to me, that there is some risk out there. Or you put me in prison, and I had some medical condition, and you were deliberately indifferent to that. You should have helped me solve my medical condition. Here, the person you're suing actually caused the injury. His, he did the thing. And I guess I'm just trying to figure out what is, given that you could presumably just sue that person for their own conduct, whether they're in the prison guard or not, right? I mean, if I'm working on the side of the road, and I throw concrete at somebody, and it hurts them, doesn't matter whether I'm a prison guard or anybody. I'm liable for that under negligence. And so what are we doing here that's necessary to make this deliberate indifference? First of all, we are suing Mr. Brindley for that own conduct. So we are seeking to hold him personally responsible for what was done here. And I actually think I'll agree with you that the first two categories of cases you mentioned, those are classic sort of archetypal instances of deliberate indifference. And then you said, those are often cases where it was sort of allowing some harm to befall an inmate, as opposed to being the person who inflicts the harm. But I would submit, Your Honor, that that actually makes this case an even stronger example, where deliberate indifference is absolutely appropriate. Because it's Mr. Brindley who is performing the work. It's not, well, you should have kept an eye on an inmate. It's not, well, you should have known that a prison riot might come out. Or you should have known that prescribing one medication as opposed to another was going to cause some harm. This is an individual who is doing the dangerous work, right? Is seeing that these inmates weren't able to move it. All six of them weren't able to move it. Is seeing that it couldn't be broken up with a jackhammer. And saying, I'm going to bring a bulldozer in to try to break this piece of concrete up. Of what relevance is it to the deliberate indifference analysis that we're traveling under a constitutional provision that prohibits the infliction of harm? So I know I've got my own little pet theory about this that you don't have to indulge. But in the majority opinion in Wade, we did say that this has a bearing on the degree of criminal recklessness that we are going to require. That we are, in fact, traveling under a provision that on its face prohibits only the infliction of punishment. And it just feels like, maybe to Judge Brasher's question, like we're kind of miles away from the infliction of punishment in this case. I take your question in good faith, Your Honor. I think that the case is established that it's not just judicially imposed punishments, but it's simply the conditions of confinement that entitle inmates like my client to be free from unreasonable risks of harm. Regardless whether that harm flows from the direct result of a punishment that a correctional officer is choosing to impose, or the denial of medical care, the choice to put a prisoner in a general population as opposed to segregated population, the Eighth Amendment protection runs a gamut of cases and a gamut of situations. And I do think here, Your Honor, that I really do believe that this case, the fact that it's not a punishment, the fact that there was no concern for my client being unruly or disrupting the orderliness of the work site, it strengthens our case. Because there is no sort of punitive justification or orderly justification for Mr. Brindley to not take reasonable safety precautions. Why wasn't the supervisor over these inmates deliberately indifferent to the statute of risks of harm? The supervisor has all the safety equipment, brings the prisoners out there to do the work, and has the power to avoid it, just like Brindley. So two answers on that, Your Honor. I do know that in the initial district court proceedings that there were some additional constitutional claims raised against other non-St. Lucie County defendants. And I candidly cannot recall the exact reasons why those were dismissed. But to the second part of your statement there about who controlled the equipment and who was responsible for their protection, the facts, as submitted in this case, is that while FDOC may have maintained custody over the equipment, that it was the St. Lucie County employees who dictated what particular equipment should be issued and were responsible for ensuring that inmates were wearing that equipment while performing a particular type of work. So in this case, it's Mr. Brindley who's the appropriate defendant for this claim. He, in fact, was the prison supervisor. Yeah, and with respect to the prison supervisor and the FDOC personnel that maybe should have been pursuant to the contract with the county, that maybe should have been present and maybe should have been doing that work, the evidence is that they simply weren't doing it. Very well. Thank you very much for your presentation. And thank you again for your service to the court. All right, Ms. Kline, you've got five minutes remaining. Maybe pull the mic down. There we go. Well done. Thank you. On the deliberate indifference issue, this court, in its opinion on rehearing on Bonk in the Wade case, very specifically says that the former case out of the Florida US Supreme Court observed that the Eighth Amendment does not outlaw cruel and unusual conditions, but only outlaws cruel and unusual punishment. And it emphasized that only an actual infliction of punishment would be sufficient to satisfy the Eighth Amendment. And in doing so, this court very clearly said, in order to meet that very high burden, the defendant must act with subjective recklessness as used in criminal law. So it is not a simple negligence, new or should have known standard. It is an actually new standard. And also the question of whether or not he responded reasonably to that known risk. Well, there is no evidence whatsoever that Mr. Brinley had any idea that this concrete that he was breaking up could or would or possibly go flying and hit someone 5 to 10 feet away, which is what Mr. Hubbard said he was. And even assuming that he had reason to know that, he certainly responded reasonably by telling him to stand back. Whether or not that was sufficient, whether or not he should have said stand back 25 feet, that's basically irrelevant. It's clear on this record that he didn't sit back and do nothing. It is also clear on this record that Mr. Brinley did not an Eighth Amendment violation by doing a cruel and unusual punishment with respect to Mr. Hubbard. Now, there was a question regarding whether or not this was a clearly established violation, separate and apart from whether or not there was law in this circuit or the Supreme Court. In the King case, this court made it clear that it's got to be something more than just reiterating the standard. There must be actual specific evidence, none of which was cited by Judge Moore in his opinion, as to what facts would have put a reasonable official on notice. What should Mr. Brinley have been aware of at the time he used his front end loader to break up concrete? Is it so obvious, like for example, deciding not to feed a prisoner because you just don't like him? Does it rise to the level that anyone would know that this is deliberately indifferent, that this is likely to harm the plaintiff in this case? This case just simply does not rise to that level. Finally, on the question about Judge Brasher as to isn't this more of a typical negligence case, I agree and I believe that we put in our briefs that yes, if the plaintiff had any case at all, it would have been a simple negligence under state law. The problem is the statute of limitations. The statute of limitations had run. That's why we're here. That does not turn a simple negligence case into a cruel and unusual punishment that warrants this kind of litigation against Mr. Brinley, who was not in fact an FDOC official, but was simply an official of the St. Lucie County doing a construction job. We respectfully request that this court reverse Judge Moore's denial of the summary judgment and remand with instructions to enter judgment in favor of Mr. Brinley. Thank you. Thank you.  That case is submitted and we are going to motor on to the